UNITED STATES

v.

**Michael H. CHAMBERS, 555 94 3735, Seaman (E–3), U.S. Naval Reserve.**

**NMCM 86 3182.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 10 April 1986.

Decided 25 March 1987.

CDR J.A. WILLIAMS, JAGC, USN, Appellate Defense Counsel.

LT J. CUNYON GORDON, JAGC, USN, Appellate Defense Counsel.

LCDR LAWRENCE W. MUSCHAMP, JAGC, USN, Appellate Government Counsel.

Before GORMLEY, C.J., and RILEY and GRANT, JJ.

PER CURIAM:

The appellant was charged with two specifications of distribution of cocaine to Seaman Apprentice McBride on board the USS NEW JERSEY (BB–62) on two separate dates. He pled not guilty. A general court-martial composed of officer and enlisted members acquitted him of one of the alleged distributions and found him guilty of the other. He was sentenced to confinement for nine months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence without change.

I

A brief synopsis of the facts is deemed appropriate. Seaman Apprentice McBride, who was suspected of drug involvement himself, was recruited by the shipboard Master-at-Arms (MAA) force and the Naval Investigative Service (NIS) agency as a drug informant in their anti-drug efforts on the ship. He testified that in this capacity he made controlled purchases of cocaine from the appellant on two separate occasions. The first sale was unobserved by anyone else, and his testimony regarding that occurrence was obviously not believed by the court since the appellant was found not guilty. The second controlled purchase took place in the boatswain's locker and was observed by the NIS agent and a first class Master-at-Arms who had secreted themselves on some shelving only a few feet away. Thus, McBride's story regarding the second sale was essentially confirmed by two other witnesses, accepted by the court members as truthful, and formed the basis for his conviction.

The appellant explained that his appearance in the boatswain's locker with a packet of cocaine which he gave to McBride was all quite innocent. According to him, it was McBride who initially approached the appellant seeking help in obtaining drugs. When this effort was unsuccessful, McBride purportedly confided in the appellant that he actually was working with the MAA and had attempted to buy drugs from the appellant "to see if I was a drug dealer or something." As to the details of the second purchase, the appellant explained that it was not a purchase at all—that McBride told him "he needed someone to bring some drugs to the [b]oatswain's [l]ocker," which drugs were apparently in "[a] package off his rack"; that McBride himself could not fetch these drugs because "he was being watched" by the MAA force. Thus, in order to help out a shipmate who was involved in some type of undercover drug operation, he did as requested; i.e., he went to McBride's rack, got a one-quarter ounce of cocaine, took it to the boatswain's locker, gave it to McBride, and departed without any money being exchanged.

II

The military judge treated the matter as raising the affirmative defense

of mistake of fact to be settled by the fact finders. His instruction to the members in this regard is the point of contention on appeal. The assignment of error is that:

WHEN THE TRIAL JUDGE INSTRUCTED THAT APPELLANT'S BELIEF THAT HIS DISTRIBUTION OF COCAINE HAD A LAW ENFORCEMENT PURPOSE HAD TO BE GENUINE *AND* REASONABLE, HE ERRED.

We disagree. Since the appellant allegedly believed that McBride was working undercover for government authorities, he was not mistaken about the general nature of the substance in the package, or about his intent to distribute it to McBride, or about the proscription in Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a, against distributing controlled substances. His claim, however articulated at trial, is premised upon McBride's alleged request that the appellant obtain and deliver to McBride the package, which in turn justified the appellant's action in distributing the substance to McBride because of the appellant's good faith reliance upon McBride's apparent authority to authorize the endeavor. McBride testified he made no such representations, and the Government's case was dedicated to proving that the appellant was not only guilty as charged, but he perjured himself in raising the bogus defense.

In *United States v. Kelly*, 718 F.2d 661 (4th Cir.1983), a similar defense was raised by the defendant who claimed he participated in what would otherwise be an unlawful conspiracy to distribute a controlled substance with his co-defendant, Harris, only because a government informant enlisted him to cooperate with government investigators in apprehending Harris. The Fourth Circuit Court of Appeals, in rejecting Kelly's defense, held:

If Kelly indeed acted on the basis of a mistake, however, it was a mistake of law, not a mistake of fact. Ray, as an informant, unlike a law enforcement agent, not only had no apparent legal authority, but there was no legal basis on which he could have enlisted Kelly in undercover activity with impunity. Kelly knew that Ray was at most an informant, not an agent or government employee. His alleged state of mind, then, was not a mistake of fact as to Ray's status, but resulted from a misconception of the legal prerogatives attached to that status. As a mistake of law, Kelly's alleged belief is no defense to his criminal act. [Citations omitted.] Moreover, even if Kelly's conception of Ray's authority was somehow considered a mistake of fact, under the circumstances of this case Kelly could not have "willfully and blindly" relied on Ray's proffered authority. [Citations omitted.]

*Id.* at 665. The United States Court of Appeals, District of Columbia Circuit, in *United States v. Barker*, 546 F.2d 940 (D.C.Cir.1976), a case involving a conspiracy to violate a person's civil rights, held that a "defendant's error as to his *authority* to engage in particular activity, if based upon a mistaken view of legal requirements (or ignorance thereof), is a mistake of *law*," which "generally will not excuse the commission of an offense." *Id.* at 946. However, the *Barker* Court opined "there is an overriding societal interest in having individuals rely on the authoritative pronouncements of officials whose decisions we wish to see respected," and noted the need for exceptions to the general rule "where its application would be peculiarly unjust or counterproductive." *Id.* at 947. The Court then recognized that under such circumstances the defendant should be permitted to assert a defense not unlike that of mistake of fact, but only where the mistake is *"objectively reasonable." Id.* at 947–948.

In the present case, the trial judge elected to give a mistake of fact instruction conditioned upon the reasonableness of the appellant's alleged mistaken belief, rejecting the appellant's claim that his mistaken belief need be only honest. Finding no basis for the appellant's claim in Rule for Courts-Martial 916(j), we will apply the *Kelly/Barker* rationale. As such, we conclude the appellant received all that he was entitled to in the instruction, assuming the

defense of mistake of law was raised at all. Furthermore, under the circumstances, we conclude that the appellant's guilt was established beyond a reasonable doubt.

Accordingly, we affirm the findings of guilty and sentence as approved on review below. We have considered the clemency petitions.